

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN   11

GROVER SELLERS
ATTORNEY GENERAL

Honorable Durwood Manford
Chairman, Committee on Highways and Roads
House of Representatives
Forty-ninth Legislature
Austin, Texas

Dear Mr. Manford:

Opinion No. O-6341
Re: Would it be possible for the
State of Texas to collect a
tax on gasoline sold within
the State of Texas to the
Federal Government or agen-
cies of the Federal Govern-
ment?

We are in receipt of your letter of February 13, 1945, reading as follows:

"Attached you will find copy of a memorandum opinion of the Comptroller General of the United States and copy of a brief prepared by the General Counsel of the Department of Highways of the State of Louisiana, with reference to taxation of gasoline sold to the Federal Government.

"From reading these opinions it occurs to me that the State of Texas could legally collect from the Federal Government a tax on gasoline sold to Federal Government Agencies.

"As Chairman of the Roads Committee of the House, it would be appreciated if you would give this matter your attention and advise this Committee if it would be possible for the State of Texas to collect a tax on gasoline sold within the State of Texas to agencies of the Federal Government."

Prior opinions of this department have dealt with the question presented in your letter in one form or another, and from these we think may be gathered what we conceive the law to be upon the right of the State to levy and collect the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Durwood Manford, page 2

motor fuel tax (Article 7065b, V.A.C.S.) from the Federal Government or the instrumentalities thereof.

We stated in opinion No. 0-5309-A, the following:

"Motor fuels sold to and used by federal agencies: Sec. 2(d) of the Motor Fuels Tax Act (Art. 7065b, V.A.C.S.) provides in part as follows:

"'No tax shall be imposed upon the sale, use, or distribution of any motor fuel, the imposing of which would constitute an unlawful burden on interstate commerce and which is not subject to be taxed under the Constitution of the State of Texas and the United States.'

"Although large inroads have been made on the doctrine of inter-governmental tax immunity as established by Chief Justice Marshall in the case of McCulloch v. Maryland, 4 Wheat 316, 4 U. S. 579 (L. Ed.), the doctrine still persists at least to the extent of affording immunity from state taxation to the federal government itself and to those federal agencies and instrumentalities which Congress has chosen to declare tax exempt, Pittman v. H. O. L. C., 308 U. S. 21, 84 L. Ed. 11, 60 Sup. Ct. 15. Typical of the latter type of agency is the Defense Plant Corporation, which is Sec. 610 of Title 15, U.S.C.A., the Congress has declared to be exempt from all sales, use, storage and purchase taxes imposed by any state or political subdivision. We are of the opinion that this doctrine and the above quoted provision of our tax statute preclude the imposition of our motor fuels tax upon sales or uses by the federal government and by federal agencies and instrumentalities which Congress has exempted. Consequently, you are respectfully advised that no tax should be levied or collected upon such sales or uses."

Briefly stated, this opinion pronounces the law to be: The tax cannot be assessed and collected from the Federal Government and the agencies thereof if Congress has expressly exempted the Federal Government and its agencies from the tax. However, as stated in opinion No. 0-5995, in those instances where Congress has expressly consented to the imposition of the tax, as is done by the Buck Amendment of the Hayden-Cartwright Federal Aid Act with respect to motor fuel sold "post exchanges, ship stores, ship service stores, commissaries, filling stations, licensed traders, and other similar agencies, located on United States

Honorable Durwood Manford, page 3

military or other reservations, when such fuels are not for the exclusive use of the United States," the tax may be collected. There is therefore no doubt of the right of the State to impose this tax upon the Federal Government and its agencies by congressional grant, but where this right has been expressly withheld by Congress, or the Legislature has accorded an exception, the tax cannot be assessed or collected by the State.

There is a third possibility, not covered by the two contingencies noted above, that is, where there has been neither a congressional grant or the withholding thereof expressly declared by Congress, or an expressed exception in the State statutes, but the immunity from the tax, if any, must rest upon the Constitution itself, to which we next turn our attention.

Section 2a of our motor fuel taxing statute provides in part as follows:

"There shall be and is hereby levied and imposed (except as hereinafter provided) upon the first sale, distribution or use of motor fuel in this State an occupational or excise tax of Four (4) cents per gallon or fractional part thereof as sold, distributed, or used in this State. . . In each subsequent sale or distribution of motor fuel upon which the tax of Four (4) cents per gallon has been collected, the said tax shall be added to the selling price, so that such tax is paid ultimately by the person using or consuming said motor fuel for the purpose of generating power for the propulsion of any motor vehicle upon the public highways of this State. It is the intent and purpose of this Article to collect the tax levied herein at the source of said motor fuel in Texas or as soon thereafter as the same may be subject to being taxes. . . ." (Emphasis added)

The pertinent inquiry in this connection is: Where does the legal incidence of the tax rest? It is within the exclusive province of our Supreme Court to determine this question. Alabama v. King & Boozer, Supreme Court of the United States, 86 L. Ed. 1. Our Supreme Court in the case of State v. City of El Paso, speaking through Justice Critz, said:

"From the several statutory provisions it is evident that the legislative intent, as expressed in the above statutes, is to impose a motor fuel tax of four cents per gallon on the first sale of motor fuel, where such fuel is actually sold in Texas. It is further evident that the Legislature intended to impose

Honorable Durwood Manford, page 4

a four cents per gallon user tax on all motor fuel
used on the public highways of this State in instances
where the user obtains such motor fuel under such cir-
cumstances that no actual sale thereof transpires in
Texas. Simply stated, when our motor fuel tax laws
are read and construed as a whole, it is evident that
the tax levied for use of motor fuel in this State and
the tax levied for sale of motor fuel are the same.
Under the express words of the statute, use of motor
fuel without actual sale in this State is still a
statutory sale; that is to say: 'first use' is the
'first sale' for taxation purposes where there is
no actual first sale." (Emphasis ours)

When the statute by its terms imposed a tax upon the
first sale, first distribution or first use in this State, it
was deemed necessary to make more explicit who is to pay the
tax. To this end the Legislature deemed it expedient to define
certain terms used in the Act, and to these definitions we must
adhere. We covered this in our opinion No. 0-5995, from which
we quote as follows:

"We deem it helpful as we proceed to note certain
definitions contained in Art. 7065b-1, just as the
court did in the consideration of the case of State v.
City of El Paso, (Sup. Ct.) 143 S.W. (2d) 366, in con-
struing our motor fuel tax statute as it then existed
and before it was amended. Much said in this case is not
inappropriate in considering our present statute. The
court deemed it helpful to note the definitions contained
in the act, especially the definition of the tax, which
was the same as contained in the present act, and is as
follows:

"'An occupation or excise tax of 4¢ per gallon of
motor fuel or fractional part thereof.'

"The tax, by the express language of the statute, is
upon the first sale, first distribution, or first use of
motor fuel in this State. Our present statute defines a
first sale thus:

"'First sale' shall mean the first sale or distribu-
tion in this State of motor fuel refined, blended, imported
into, or in any other manner, produced in, acquired or
brought into this State.'

Honorable Durwood Manford, page 5

"Who under the statute initiates a first sale, a distribution or use of motor fuel upon which the tax is levied? The statute answers: (a) 'distributor'. Who is a 'distributor'? Again the statute answers as follows:

"'Distributor shall mean and include every person in this State who refines, distills, manufactures, produces, blends, or compounds motor fuel or blended materials, or in any other manner acquires or possesses motor fuel or blended material for the purpose of making a first sale, use, or distribution of the same in this State; and it shall also include every person in this State who ships, transports, or imports any motor fuel or blended material into this State and makes the first sale, use, or distribution of same in this State; the said term shall also include every person in this State who produces or collects the liquid residuent of natural gas, commonly known as drip gasoline, or who is responsible for the production or formation of said drip gasoline, intentionally or otherwise, unless said product is totally destroyed or rendered neutral as motor fuel or as a product capable of use as motor fuel in this State.'

"In order that there be no loophole for escape in those instances where the tax falls upon the first use or distribution of motor fuel as distinguished from a first sale, we again look to certain definitions contained in the act. These are as follows:

"They term 'user' shall be construed to mean any person who uses or consumes 'liquefied gases' and 'other liquid fuels' within this State in internal combustion engines for the generation of power to propel motor vehicles upon the public highways of this State.

"'"Distribution" shall mean and include any transactions, other than a sale, in which ownership or title to motor fuel, or any derivative of crude oil or natural gas, passes from one person to another.'

"'"Person" shall mean and include every individual, firm, association, joint stock company, syndicate, copartnership, corporation (public, private or municipal), trustee, agency or receiver.'

"'Dealer' shall mean and include every person other than a distributor who engages in the business in this State of distributing or selling motor fuel within this State.'"

Consistent with the opinion of Judge Critz in the case of State v. City of El Paso, supra, the tax is imposed upon the first use in this State in the same sense that it is imposed upon the first sale in this State. In other words, a first use is a statutory first sale. The legal incidence of the motor fuel tax is upon the ultimate user or consumer of motor fuel upon the highways of this State, and that the statutorily defined "distributor" of such fuel is merely an agency of the State for the purpose of aiding in the collection of the tax, except in those instances where such distributor might itself be a first user within the purview of the statute. In such case a distributor might itself be subject to the tax. Section (d) of the act provides in part:

"In the event this Article is in conflict with the Constitution or any law of the United States with respect to the tax levied upon the first sale, distribution, or use of motor fuel in this State, then it is hereby declared to be the intention of this Article to impose the tax levied herein upon the first subsequent sale, distribution, or use of said motor fuel which may be subject to being taxed."

Therefore, in view of the portion of Section (d) quoted, supra, we think it may be safely said that though the "sale" of motor fuel to the Federal Government or certain of its agencies might be tax exempt, it was the intention of the Legislature to levy a tax on any subsequent "sale" or "use" of such fuel which might constitutionally be taxed. We think there would be no constitutional prohibition against the taxing of a subsequent sale or use of motor fuel if the Federal Government or its agencies were not the subject of the incidence of the tax as a direct purchaser or vendee for its own use.

Summarizing briefly what we have somewhat tediously said, the tax may be imposed under specific congressional grant upon a direct sale or use to the Federal Government or its agencies, and may not be imposed where Congress has specifically forbidden the imposition of the tax, or the State has made an exception. But if none of these contingencies exist, the tax may not be imposed upon direct sales to the Federal Government or its agencies if the incidence of the tax rests upon the Federal Government or its agencies as the immediate vendee and user of the motor fuel for its direct use and benefit. But beyond this,

when there is a first sale or first use, not so restricted, a tax may be imposed upon such vendee or user.

You submit with your opinion request a copy of the ruling of the Comptroller General of the United States upon the law of North Dakota as is so ably discussed by the Supreme Court of that state and also comments from the general counsel of the Highway Department of the State of Louisiana as applicable to the sale of motor fuel in those states, and we take the liberty of pointing out the distinction between our law and the law of North Dakota and Louisiana.

Briefly stated, the distinction is this: the legal incidence of the tax under the North Dakota law is upon the vendor and is imposed primarily as an occupation tax, with the privilege of adding the tax to the price for which the dealer sells the gas, whereas under our law the legal incidence of the tax is upon the first vendee or the first user of the gas for use upon the public highways. To express it another way, the tax is upon the first sale or the first use in this State legally subject to the tax. As said by Judge Critz in the case of State v. City of El Paso, supra, for the purpose of our tax, first sale and first use mean the same thing. In other words, as said by him, first use is a statutory first sale. It is, therefore, apparent that the decisive factor in the North Dakota law is that the incidence of the tax is not upon the vendee but upon the vendor engaged in the occupation of selling gas. It is manifest that if the North Dakota law had placed the incidence of the tax upon the vendee and the Federal Government should be the vendee in the purchase of gas for its use, then constitutional difficulties would have been encountered, and no doubt the pronouncement of the law different. The general counsel of the Highway Department of Louisiana stated that the situation in that state was similar to that in North Dakota; hence the law would be the same.

Pointing out the distinction between the law in our State and North Dakota and Louisiana is as far as we feel at liberty to go in attempting to lay down a rule for the Legislature to follow in any proposed legislation upon the subject.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By

L. P. Lollar
Assistant

LPL/JCP